J-S71036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.M.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| M.J.S. | |
| Appellee | No. 861 WDA 2015 |

Appeal from the Order Entered May 1, 2015
In the Court of Common Pleas of Forest County
Domestic Relations at No(s): 00001-2008

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                **FILED DECEMBER 16, 2015**

C.M.W. ("Mother") appeals the order entered May 1, 2015, in the Forest County Court of Common Pleas, dismissing her exceptions to the March 4, 2015, recommendation of the Domestic Relations Hearing Officer ("DRHO"), and affirming the DRHO's recommendation.  Relevant to this appeal, the DRHO found a material and substantial change in circumstances warranting an upward modification of the child support payments of M.J.S. ("Father"), but declined to disturb the parties' prior agreement that awarded Father the right to claim the federal tax child dependency exemption for the year 2014 and forward.  On appeal, Mother argues the trial court's award of the dependency exemption to Father was an abuse of discretion.  For the reasons that follow, we affirm.

Mother and Father, who were never married, had a daughter ("Child") born in February of 2005. Mother filed a complaint for child support in January of 2008.[1] After conducting a hearing, the DRHO filed a recommendation that Father pay Mother $271.00 per month in child support, retroactive to Child's birth. On April 1, 2008, the trial court entered the recommendation as a final order of court.

On August 1, 2014, Mother filed a petition for modification of support, contending there had been no review of the parties' financial circumstances since the entry of the original order in April 2008, and the income of the parties had changed. Although a hearing before the DRHO was scheduled for October 2, 2014, on that date, the parties engaged in "informal settlement negotiations" which ultimately led to a "comprehensive agreement." Recommendation, 10/2/2014, at 1. Pursuant to the agreement, the parties stipulated, *inter alia*: (1) Father's support obligation would be $394.14 per month from August 1, 2014, through December 31, 2014, and beginning January 1, 2015, increase to $453.68 per month; and (2) Father would be awarded the federal tax child dependency exemption for the year 2014 and "future tax years pending further order of court." ***Id.*** at 1-2. The agreement was entered as a final order of court on November 12, 2014.

_____

[1] From our review of the record, it appears that Mother has always had primary physical custody of Child.

One month later, on December 15, 2014, Mother filed a petition for modification, asserting a material and substantial change in circumstances. *See* Pa.R.C.P. 1910.19(a). Specifically, Mother claimed the award of the dependency exemption to Father did not "maximize the total income available to the parties[,]" and, in fact, "substantially reduce[d] income available" to Mother. Petition for Modification of an Existing Support Order, 12/15/2014. She also averred Father was receiving overtime compensation. The parties appeared for an evidentiary hearing before the DRHO on February 5, 2015. The trial court summarized the evidence presented at that hearing as follows:

> [Mother] and [Father] entered into an agreement regarding child support on October 2, 2014. Both parties had the benefit of counsel when they negotiated that agreement. The DRHO did not guide the negotiations. The agreement increased child support payments to [Mother] and allowed [Father] to claim the Dependency Tax Exemption. Days after the agreement, [Mother's] husband telephoned his accountant, Greg Rhodes, with misgivings regarding the tax implications of the agreement. On October 6, 2014, Mr. Rhodes sent [Mother's] husband a letter regarding his inquiry into the Dependency Tax Exemption. In early December, 2014, [Father] received a pay raise. [Mother's] income also increased around the same time for her position as Cheerleading Coach. On December 15, 2014, [Mother] filed a Petition to Modify.

> [Mother] files her [tax returns] jointly with her husband. [Mother] earned a total of $699.77 in 2014 because she feels she does not need to work. Her husband earned $47,212.23. [Mother's] husband also holds the sole ownership interest in four limited liability companies; however, only two appear on the draft tax returns. [Mother] is fully aware of the four limited liability companies and their inner workings. Mr. Rhodes, an accountant, prepared the taxes for [Mother] and her husband for the past decade. Mr. Rhodes prepared two versions for the 2014

- 3 -

year to illustrate the effect of claiming the Dependency Tax Exemption. Mr. Rhodes stated that he was only aware of two out of the four limited liability companies. Mr. Rhodes' calculations suggest that the Dependency Tax Exemption had a $1,740 impact on [Mother] and her husband's taxes.

[Father] also provided draft tax returns. [Father] did not employ an accountant to prepare them. [Father's] calculations suggest that the Dependency Tax Exemption has a $1,290 impact on [Father's] taxes.

Trial Court Opinion, 7/16/2015, at 1-2. Father also testified that, in exchange for the right to claim the tax exemption, he agreed to pay more in child support beginning in 2015. N.T., 2/5/2015, at 82.

Following the hearing, the DRHO filed a recommendation proposing an increase in Father's child support payments beginning January 1, 2015, from $453.68 per month to $516.30 per month. DRHO Recommendation, 2/5/2015, at 1. The DRHO also recommended Father retain the right to claim the dependency exemption in 2014 and in future years pending further order of the court. *Id.* Mother filed timely exceptions to the DRHO's recommendation, and the trial court held argument on May 1, 2015. That same day, the court dismissed Mother's exceptions and affirmed the recommendation of the DRHO. Mother filed a timely motion for reconsideration on May 11, 2015, which the trial court promptly denied. This timely appeal followed.[2]

_____

[2] On June 2, 2015, the trial court ordered Mother to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Mother complied with the court's directive and filed a concise statement on June 19, 2015.

Mother's arguments on appeal challenge the trial court's award of the federal tax child dependency exemption to Father, the non-custodial parent. We review a trial court's award of child support for an abuse of discretion. *May v. May*, 837 A.2d 566, 568 (Pa. Super. 2003).

As a general rule, under the Federal Tax Code, "the custodial parent is entitled to the [child] dependency exemptions." *Id.* at 568, *citing* 26 U.S.C. § 152(e)(1). However, the Code was amended in 1984 to provide three exceptions to the general rule, one of which is when the custodial parent "signs a written declaration that she will not take the exemption[.]" *Id.* (citations omitted). As this Court explained in *Miller v. Miller*, 744 A.2d 778 (Pa. Super. 1999), the changes to the Tax Code that allowed for this exception demonstrated "Congress' surpassing indifference to how the exemption is allocated so long as the [Internal Revenue Service] doesn't have to do the allocating." *Id.* at 784 (citation omitted).

Accordingly, Pennsylvania's support guidelines permit the trial court to award the child dependency exemption to the non-custodial parent under certain circumstances. Pertinent to this case, Pennsylvania Rule of Civil Procedure 1910.16-2(f) provides:

> **(f) Dependency Tax Exemption.** In order to maximize the total income available to the parties and children, the court may, as justice and fairness require, award the federal child dependency tax exemption to the non-custodial parent, or to either parent in cases of equally shared custody, and order the other party to execute the waiver required by the Internal Revenue Code, 26 U.S.C.A. § 152(e). The tax consequences resulting from an award of the child dependency exemption must

be considered in calculating each party's income available for support.

Pa.R.C.P. 1910.16-2(f).

Mother first contends the trial court abused its discretion in awarding the dependency exemption to Father because it relied solely on the parties' prior agreement, and disregarded the fact she demonstrated a material and substantial change in the parties' financial circumstances. Mother points to the evidence she presented that Father received a pay increase in December 2014, two quarterly bonuses in 2014, and six hours of overtime in January 2015, all of which he failed to report to her.[3] **See** Mother's Brief at 15. Further, she emphasizes the DRHO agreed there was a "material and substance change in circumstances which took place after the existing support obligation was entered," as is evident from its recommendation of an increase in Father's support obligation. **See** DRHO Recommendation, 2/5/2015, at 7-8. However, Mother claims the DRHO, as well as the trial court, abused its discretion when it determined "it would be inequitable to award the 2014 tax exemption to [Mother] simply because she decided after the fact that she had made an undesirable bargain[.]" **Id.** at 9. **See also** Trial Court Opinion, 7/16/2015, at 4. She argues that once she met "the threshold burden of proving [] a material and substantial change in

_____

[3] We note Father testified he reported his pay increase to Domestic Relations. N.T., 2/5/2015, at 79.

circumstances[,]" the fact that "the parties entered into an agreement is of no consequence." Mother's Brief at 18.

We find Mother has misinterpreted both the recommendation of the DRHO and the ruling of the trial court. The DRHO determined Mother presented evidence of a "material and substantial change in circumstances," based on Father's pay raise in early December 2014, which necessitated an increase in his monthly support payments. *See* DRHO Recommendation, 2/5/2015, at 7-8. However, the DRHO further found the "year-end raise" did not "materially change[] the facts as they were known to the parties on 10/02/14 **with respect to the 2014 tax exemption**." *Id.* at 9 (emphasis supplied). Indeed, Father received a $1.00 per hour raise in early December of that year.

Moreover, with regard to the tax exemption in future years, the DRHO found "the total income available to the parties and the child will be maximized if [Father] is permitted to claim [Child] as a tax exemption." *Id.* at 10. In arriving at that conclusion, the DRHO recalculated the potential tax savings of the parties using Mother's earning capacity, as opposed to her actual earnings, which was what her accountant utilized when drafting the tax forms presented at the hearing. *See id.* at 9-10. The trial court agreed with the DRHO's recommendation, further noting that Mother's counsel agreed during argument that there was no change in the parties' circumstances **concerning the tax deduction**. *See* N.T., 5/1/2015, at 5. The court also emphasized Mother's testimony that she "works very few

- 7 -

hours because she does not need the income," and expressed its concern that Mother and her husband were "not forthcoming" with their accountant regarding two of the LLC companies in her husband's name. Trial Court Opinion, 7/9/2015, at 4.

Based on our review of the testimony from the February 5, 2015, hearing, the May 1, 2015, arguments, the DRHO's recommendation, and trial court's opinion, we find no abuse of discretion. On October 2, 2014, Mother and Father decided to forego a support hearing, and enter stipulated facts on the record. Father testified that, as part of their agreement, he agreed to pay an increased monthly support amount, in exchange for the ability to claim Child as a federal tax exemption. N.T., 2/5/2015, at 82. Both the DRHO and the trial court determined there was no change in the parties' circumstances with regard to the tax exemption between the entry of the agreement, on October 4, 2014, and the DRHO hearing on February 5, 2015. We agree.

Next, Mother argues the trial court abused its discretion when it considered her "earning capacity, as opposed to actual earnings," in calculating her tax consequences if Father claimed the dependency exemption. Mother's Brief at 18. While acknowledging "an earning capacity can be assigned for support calculations," Mother contends "earning capacities are not used in preparing and filing personal income tax returns and therefore a consideration of tax consequences must be based on … actual wages, not draft tax returns using earning capacities." *Id.* at 19.

She also argues the court erred in affirming the DRHO's recommendation when it "estimated [Father's earned income tax credit] where [Father's] draft returns do not reflect the same information." *Id.*

The DRHO determined that "for support purposes[,] [Mother] should be assigned a full-time earning capacity[.]"[4] DRHO Recommendation, 2/5/2015, at 7. Therefore, in determining the tax consequences of awarding the dependency exemption to Father, the DRHO calculated the potential savings using Mother's earning capacity. Rule 1910.16-2(f) does not prohibit the calculation of tax consequences based on earning potential, and Mother has cited no case law to the contrary. Accordingly, we find no abuse of discretion on the part of the DRHO in doing so.

With regard to the DRHO's estimation of Father's tax savings including the earned income tax credit,[5] Mother cites no authority prohibiting such a consideration. Indeed, Father testified he did not include the credit in his draft tax returns because he "wasn't sure" he would qualify for the credit

_____

[4] In affirming the recommendation, the trial court emphasized Mother's testimony that she "works very few hours because she does not need the income." Trial Court Opinion, 7/9/2015, at 4, *citing* N.T., 2/5/2015, at 62 ("I got this job out of leisure. … I don't really have to work. I prefer to be home for my children, to care for them."). Mother also acknowledged that all of her children are now in school. N.T., 2/5/2015, at 62.

[5] The earned income tax credit "is a benefit for working people who have low to moderate income … [which] reduces the amount of tax you owe and may also give you a refund." https://www.irs.gov/Credits-& - Deductions/Individuals/Earned-Income-Tax-Credit.

and "wanted to speak with somebody before" he included it. N.T., 2/5/2015, at 81. Moreover, while it appears the DRHO considered the additional tax savings Father would receive should he qualify for the earned income tax credit, it did not base its final recommendation solely on this potential credit. Accordingly, we will not disturb the trial court's ruling.

In her final issue, Mother contends the trial court abused its discretion when it determined that it would be inequitable to award her the tax exemption, and would "diminish [Father's] incentive to continue child support payments[.]" Mother's Brief at 20. Specifically, Mother asserts the trial court misconstrued testimony during the modification hearing, and failed to consider the primary purpose of the tax credit is to "maximize income available for child support." *Id.* at 21, *citing* **May**, **supra**. While Mother recognizes an allocation may be conditioned upon another purpose, such as timely child support payments, she asserts that no such incentive was placed on Father in the present case. *See id.* at 21-22.

First, Mother asserts the trial court misconstrued testimony when it made the following findings in its opinion: (1) Father relied on the parties' October 2015 agreement "to spend more for the benefit of the child, such as clothing[;]" (2) Mother "[w]hen questioned regarding whether circumstances changed regarding the Dependency Tax Exemption, … conceded that no change occurred[;]" and (3) Mother and her husband "were not forthcoming with their own accountant … because they did not disclose information regarding two LLC's." Mother's Brief at 22-23, citing Trial Court Opinion,

7/9/2015, at 4. Our review of the record reveals no error on the part of the trial court.

During the modification hearing, Father testified he agreed to pay more in child support in exchange for claiming Child as a dependent on his federal taxes. N.T., 2/5/2015, at 82. He stated:

> And I continue to get other things, you know, for my daughter anyway besides the child support. So I figured if I could get it [the exemption] back and, you know, get her some things with it, then why not. And we had agreed to that anyway.

*Id.* He further explained that, in addition to providing child support to Mother, he buys Child clothes that he sends home with her, and has added money to her lunch account at school. *Id.* at 83-84. Therefore, we agree with the trial court's finding that Father relied on the parties' agreement "to spend more for the benefit of the child, such as clothing." Trial Court Opinion, 7/9/2015, at 4.

Next, with regard to Mother's purported concession that no change in circumstances had occurred with respect to the tax exemption, the trial court was referring to a statement made by Mother's attorney at the May 1, 2015, argument on her exceptions. After the court questioned whether circumstances surrounding the dependency exemption had changed since the parties' agreement a few months earlier, Mother's attorney made the following comments:

> Okay. So, that, [the parties' tax status,] your Honor, did not change. What our argument is, is that a child support order may be modified if there is a substantial change in circumstances.

And, this case, there was a substantial change in circumstances. Both parties had changes in wages, in earnings. And so, therefore, because there was a material and substantial change, our argument would be or I guess the defense argument is that you should just look at the fact there was no change with regard to the tax exemption.

But, what I would submit is that we should, that the Court shouldn't piecemeal each of the issues ….

Once you hit that threshold of substantial change in circumstances, one of the tools or one of the factors that the Court can use is the dependency exemption.

N.T., 5/1/2015, at 5-6. A fair reading of counsel's comments supports the trial court's finding. While Mother argued the court should have reconsidered the tax exemption issue in light of the change in the parties' respective incomes, her counsel conceded there had been no change to the parties' tax status since the agreement.

Lastly, concerning the trial court's statement that Mother and her husband were not "forthcoming" with their own accountant,[6] we again find the court's comment was supported by the evidence. Rhodes testified that he was not aware of two LLC companies, registered to Mother's husband, that were formed in February of 2014. N.T., 2/5/2015, at 24-25. He also acknowledged, however, that the companies would not have to be included on the tax return if there were no "transactions that would affect the numbers on the tax returns." *Id.* at 33-34. To that end, Mother testified that neither of the two LLC's "performs any business[,]" but rather, they

_____

[6] Trial Court Opinion, 7/9/2015, at 4.

- 12 -

were both "shell" corporations, created by her husband "to purchase the next business." *Id.* at 45-47. Based on this testimony, we cannot conclude the court misinterpreted the testimony when it found Mother and her husband were not "forthcoming" with their accountant.

Mother also asserts, in her final issue, the trial court abused its discretion when it found the tax exemption provided an incentive to Father to make timely support payments. She argues no such specific incentive was included in the parties' agreement.

However, as this Court recognized in *May*, *supra*:

> Though we said that the "primary purpose" of allocating the dependency tax exemption was to maximize income available for child support, our choice of language indicates that there were other purposes. Another purpose, as identified by the trial court, on the facts of this case, is to provide an incentive for timely payment of child support which, quite obviously, promotes the best interests of the children who are the subjects of the support order. Moreover, providing this exemption to Father, while giving the incentive identified by the trial court, also tends to increase or "maximize" the income he has to satisfy his support obligation.
>
> Mindful of our standard of review we find no abuse of discretion in the trial court's determination that the incentive value outweighed the monetary savings in allocating the child dependency tax exemption to father.

*May*, *supra*, 837 A.2d at 570. The same is true here. There is no indication in the *May* decision that the parties explicitly agreed that the father's award of the tax exemption was dependent upon his timely payment of child support. Nevertheless, the trial court in *May*, as here, recognized the inherent value of the exemption to the party who received it. Moreover,

- 13 -

contrary to Mother's protestations, the DRHO **did consider** the tax consequences of the decision.  **See** DRHO Recommendation, 2/5/2015, at 9-10.  **See also** Trial Court Opinion, 7/9/2015, at 4 (stating "[t]he DRHO based his calculations on earning capacity rather than actual earnings."). The fact that the DRHO's calculations were dissimilar to Mother's is not grounds for relief.

Therefore, because we conclude the trial court did not abuse its discretion in denying Mother's exceptions, and affirming the DRHO's recommendation, we affirm the order on appeal.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/16/2015